**BALL et al. v. HOTEL MARKHAM, Inc., et al.**

**No. 9741.**

Circuit Court of Appeals, Fifth Circuit.

June 9, 1941.

Rehearing Denied Aug. 7, 1941.

---

R. E. Wilbourn, C. C. Miller, and J. C. Floyd, all of Meridian, Miss., and Giles J. Patterson, of Jacksonville, Fla., for appellants.

R. W. Thompson, Jr., of Gulfport, Miss., and A. S. Bozeman and Geo. B. Neville, both of Meridian, Miss., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants are holders of certificates of deposit[1] for a large part, and speak for a substantial majority of, the common stock and the ten-year gold debentures of Hotel Markham, Inc., issued respectively in October and November, 1930, pursuant to the sale and purchase of Gulfport Hotel Corporation Properties on behalf of its bondholders, by a Bondholders' Protective Committee, acting under an agreement made July 1, 1930, for the protection of the holders of First Mortgage Gold Bonds of Gulfport Hotel Corporation, issued September 1, 1926.

Appellees are Delta National Bank, the present depository, Hotel Markham and the six individuals constituting at once, directors of the hotel and the protective committee.

The suit brought by Ball as plaintiff and joined in by Stone, Weddington and others as intervenors, was; to restrain the defendants from causing the hotel to issue ten-year refunding debentures in exchange for, and from taking up, the outstanding debentures for which plaintiffs held certificates; to terminate the control of the individual defendants over the stock and debentures and over the hotel; and to require the delivery to plaintiffs and intervenors, upon surrender of their certificates, of the stocks and bonds called for therein.

The claim was; that the objects and purposes of the protective agreement, under and in aid of which the certificates were issued had been fulfilled, the authority of the committee as trustees had come to an end, and plaintiffs were entitled to have and obtain full possession and control of their securities; that notwithstanding this, the members of the committee, for the purpose and with the effect of unreasonably renewing and extending its powers and control, were proposing over plaintiffs' protest, to take up and refund plaintiffs' bonds, and to continue to withhold from plaintiffs and the other holders of securities, their rightful control of their securities.

What makes the disputed issue in the case is the fact that neither the certificates, the 1930 protective agreement, nor the declaration of trust, issued after the purchase of the Gulfport Properties, contained any time limit; and that unless the term of the debentures fixes such a limit, such powers as the defendants have are exercisable without time limit until, either the objects and pur-

---

[1] Certificate of Deposit for Secured Six Per Cent Cumulative Interest Bearing Gold Debentures of Hotel Markham, Incorporated and Common No Par Stock of Hotel Markham, Inc.

"This Certifies That Secured 6% Cumulative Interest Bearing Gold Debentures, Issued by Hotel Markham, Inc., bearing date the first day of November, 1930, to the principal amount of $......, Nos. ......, and ...... Shares of Common No Par Stock of Hotel Markham, Inc., have been deposited with ............ under and pursuant to an agreement dated as of the first day of July, 1930, and amendments thereto, made for the protection of the holders of the First Mortgage Gold Bonds of Gulfport Hotel Corporation, Inc., and that ...... is the registered holder hereof and is entitled to share in the benefits of said agreement in respect to the debentures and stock so deposited, and that such debentures and stock are being held by the Committee in the undersigned depository for the registered holder hereof.

"This certificate is transferrable only on the books of the Depositories, ...... by the holder hereof in person or by attorneys upon the surrender of this certificate properly endorsed.

"The depositories shall not be bound to take notice of or be affected by any trust respecting the title or ownership of this certificate or the debentures and stock represented thereby.

"This the ...... day of ......, 1930.

..........,
"Depository,
"By ..........,
"Trust Officer.

"Authenticated as correct:

..........,
"Chairman Bondholders' Protective Committee."

poses of their trust have been fulfilled, or more than a reasonable time for their fulfillment has elapsed and it would be unreasonable to extend their powers further. It was the position of the plaintiffs therefore, that the objects and purposes of the protective agreement and of the declaration of trust had been fulfilled by the formation of the Markham Hotel Company, the issuance of its stocks and debentures and of the certificates of ownership therein, and the discharge by the committee of all of the indebtedness which it had created, under the terms of the agreement, and the declaration of trust, the better to execute its powers.

It was the position of the defendants on the other hand that the purposes and objects of the protective agreement and the declaration of trust had not been fulfilled, that the broad and unlimited powers granted in the agreement and re-affirmed in the declaration of trust, authorized them to continue to hold and manage the properties until, in their discretion, they had effected a sale thereof for cash or other property, and that when this had been done and the proceeds distributed, and only then, would their power cease and authority terminate. Particular emphasis was laid in the answer of the defendants upon their belief that the purpose of the trust was to protect the small bondholders from the large ones and that should they permit the trust to end, small bondholders would be delivered to the mercy of large ones.

Much oral testimony was taken upon the objects and purposes of the plaintiffs in trying to obtain control of their properties and upon the objects and purposes of the committee in holding on to them. At the end of it all, the district judge rightly rejected the theory of defendants that they represented a part, the holders of a minority as against the holders of a majority of the bonds. Excluding most of the oral testimony, he pitched his judgment on the broad terms of the protective agreement and in effect held that in the absence of agreement by all the holders of all of the securities that the trust should be terminated, it was for the committee, in its discretion, and if that discretion was not abused, to determine when its objects and purposes had been fulfilled, or whether they were incapable of fulfillment. Viewing the whole history of the operation, he concluded that there was no abuse of discretion in the action of the committee, and dismissed the bill.

What was established by the evidence was; that in the interest of the holders of the bonds of the Gulfport Hotel Corporation, a protective committee was formed, the agreement of July, 1930, was entered into and under and pursuant to that agreement, the Gulfport Hotel property was sold to and purchased by the committee. It thereupon, on August 7, 1930, issued a declaration of trust[2] as to it, and on August 8th

---

[2] This declaration, after referring to the July 1, 1930, bondholders protective agreement and its distribution to all the holders of Gulfport Hotel Corporation bonds, and that a letter was sent by the committee to each bondholder in which among other things it was stated: " * * * The Committee purposes to arrange for a speedy foreclosure of the mortgage, and its purchase for the account of the bondholders, if necessary, and to follow the matter up with such plan of reorganization or other disposition as it finds best for bondholders, treating all on an equal basis and hopes and believes that with your co-operation, the bondholders will eventually realize their claims in full. * * * Necessary proceedings will require some time, but it is the intention of the Committee diligently to push the matter to conclusion. It is, therefore, urgent that Bondholders deposit their bonds promptly as outlined above so that action may be taken immediately.", recited that 556 of the 560 bonds outstanding had been deposited with the committee and that the property had been sold under the bondholders and bought in by the committee. It concluded with the declaration that: "The committee holds title to the property conveyed to them by such trustee as such committee, and to their successors in office as such committee, by such deed of August 4, 1930, in trust for the equal and proportionate benefit of the bondholders of such 556 of First Mortgage Bonds, described in Exhibits 'C' and 'D' hereto, and for their successors, legal representatives and assigns, and will hold, manage, control, operate, lease, sell and convey such properties, for the benefit of such bondholders, and pursuant to the agreement of July 1, 1930, and such amendments thereto as have been made therein, and as may be made therein by such Committee in accordance with the authority thereof, and will account for and distribute ratably and proportionately to the holders and owners of such bonds, and the coupons maturing March 1, 1930, their successors, legal repre-

wrote to the bondholders: "The committee is continuing the operation of the hotel for the account of bondholders until it can work out some more advantageous disposition of the properties in your interest which the committee is diligently endeavoring to accomplish." Thereafter, pursuant to the provisions of the declaration, it effected a reorganization by causing the Hotel Markham Corporation to be formed, with themselves as directors and stockholders, causing it to issue its debentures, and then arranging for the issuance of the depository certificates on which the suit is based. From that time until the present, the committee, as officers and directors of the corporation, have managed its affairs, have paid off the bonds they put on the property, over and above the amount of the original Gulfport bonds, and have paid a small amount of interest on the debentures called for in the certificates. The committee and the corporation are now proposing to take up and retire the certificate debentures and issue in lieu thereof, new ten-year debentures for the amount of the principal and interest thereof.

It is not disputed, that the property is not now worth this amount and that there is no prospect of its becoming so. Indeed, it is conceded that it is not worth the principal amount of the certificate debentures. The claim on the part of the defendants is that this is not an opportune time to terminate the trust and that a better time will come.

The sole question presented for decision here is whether the district judge was right in holding that the protective agreement entered into in May, 1930, for the purpose of protecting the Gulfport Corporation Bondholders, continues indefinitely so as to enable the committee to reform, extend, cancel or do what it pleases with the securities of Markham Incorporated, so long as it reasonably appears to the committee that what it is doing is in the interest of the certificate holders as a whole, or whether the agreement, applicable as it was, to the holders of Gulfport Corporation Bonds, has not been satisfied and become functus officio as to the Markham Company bonds and securities, when after ten years, the debentures held under the certificates, have matured, and all the debts and obligations created by the committee have been paid and discharged.

The district judge thought that the protective agreement made with regard to Gulfport debentures, continued in force as to the Markham debentures, not indefinitely, but at least until it could be shown that the purposes had been fulfilled or the committee was abusing its discretion. He found, without stating just what these purposes were, that the purposes of the protective agreement had not been fulfilled and that no abuse of discretion had been shown. He therefore dismissed the bill as to the relief asked, both by way of restraint on the issuance of the ten-year refunding bonds, and by way of obtaining the bonds and securities upon surrender of the certificates.

We think he was wrong in both particulars. The main theory of the defense was that if Ball and the other claimants were permitted to surrender their certificates and take their securities, they would proceed either, to foreclose upon their debentures or by use of their voting power, to take over the management of the corporation, and that either of these courses would result in injury to the smaller holders of debentures and certificates. But a reading of the protective agreement discloses no word or line in it with regard to protecting minority from majority holders, no word or line in it with regard to protecting the holders of debentures of or stock in the Markham

sentatives and assigns, the net proceeds of the income of the operation of such properties and the net proceeds in monies, stocks, bonds, securities and other properties received by them on a sale and conveyance of such properties, and/or *pursuant to any plan of reorganization effected by such Committee, after all obligations of such Committee and all lawful claims against such property, if any, have been fully paid;* and will issue to each of such bondholders a certificate of participation * * * ".

The certificate of participation proposed in the declaration, gave each holder a corresponding proportionate interest in the properties and in the distribution and net income in monies, stock, bonds, securities or assets representing the net proceeds of the sale and conveyance of such properties or received pursuant to any *plan of reorganization* effected by such committee if all obligations of such committee and all lawful charges against such properties have been paid in full. This certificate was not issued because a reorganization was effected and the certificates, under which plaintiffs and intervenors hold an interest in the bonds, not of Gulfport but of the Markham Corporation, were issued. (Italics supplied.)

Company. It had to do entirely with the bonds of Gulfport and, in the formation of the Markham Company, the issuance of its debentures, and the covering certificates and the paying off of moneys borrowed by the company, there was a carrying out of that agreement. If the securities covered by plaintiffs' certificates were those of Gulfport Hotel Company or if the protective agreement had been by and for those holding stocks or securities of the Markham Hotel Company, it might be that notwithstanding the long time that has elapsed for the continuance of such committee, a court would be justified, in the absence of a showing of injury to those holders, in refusing to take cognizance of the petition. But the agreement under which the committee now seeks to perpetuate itself is an agreement for the benefit of holders of Gulfport Hotel bondholders, not of those of the Markham Hotel. The certificates plaintiffs hold cover Markham stock and debentures, and we think it clear, that the committee was without power, under it, to extend its authority and continue its control indefinitely over plaintiffs' debentures and stock, by retiring plaintiffs' Markham debentures and issuing new debentures in lieu thereof, to run for another ten years.

██ Whatever then may be the correct view as to whether upon the proof offered, plaintiffs and intervenors established that the purposes of the trust were satisfied when the debts of the committee were paid off and the debentures of Markham Hotel were matured, so that plaintiffs and intervenors were entitled to the delivery of their securities and a surrender by the committee of its control, we think it clear that the committee gravely abused its discretion in undertaking to issue ten-year refunding debentures and thus perpetuate their control for an additional ten-year term, and that the court erred in refusing to restrain that issue. We think it was further erroneous to dismiss their bill without giving fuller consideration to whether under all the facts plaintiffs should not have had the relief of delivery of their stock and surrender by defendants of their control at a time and under conditions to be fixed and determined by the court, or whether some other appropriate relief should not have been granted them.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

McCORD, Circuit Judge (dissenting).

On November 1, 1939, Edward Ball filed suit against Hotel Markham, Inc., and the Bondholders Protective Committee which controlled and managed the property of the hotel, seeking to restrain the issuance of refunding debentures by the Committee; to terminate the control of the Committee over the hotel, its stock and debentures; and to compel the Committee to deliver to him the securities named in a certificate of deposit held by him. Bessie R. Henderson, W. G. Henderson, Julius F. Stone, A. B. Weddington, and Canal Bank & Trust Company, In Liquidation, intervened and joined in the prayer of the complaint. After an extended hearing the court below denied the relief sought and dismissed the complaint of Ball and the intervening plaintiffs. Ball and others have appealed.

It is more than difficult to pass upon the confused state of the record, and to find out just what evidence is in and what portion was ruled out by the trial judge. Findings of fact as required by Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, were not entered by the court below. I have, however, carefully reviewed the record and found the important facts to be these: Gulfport Hotel Company, Inc., constructed the Hotel Markham in Gulfport, Mississippi, in the year 1926. On September 1, 1926, the corporation issued and sold $600,000 First Mortgage 6% Gold Bonds secured by a first mortgage on the hotel, and its furnishings and fixtures. Caught in the wake of the business collapse in 1930 the Gulfport Hotel Company was unable to pay interest on its bonds, and foundered and went down in the maelstrom of the depression. Shortly after Gulfport Hotel Company defaulted on its bonds, a Bondholders Protective Committee of three men was formed, and on July 1, 1930, a Bondholders Protective Agreement was executed, and under its terms and provisions bondholders deposited with the Committee bonds of the par value of $559,000.

After the formation of the Bondholders Protective Committee and the execution of the Agreement of July 1, 1930, the Trustee foreclosed the Gulfport Mortgage on August 4, 1930, and the Bondholders Protective Committee, acting pursuant to the authority conferred upon it by the Protective Agreement, purchased the property at the foreclosure sale and took title in its name. Thereafter, on August 7, 1930, it

placed of record a Declaration of Trust certifying that it held the property for the benefit of the depositing bondholders. After having purchased the hotel property, the Committee obtained a charter for Hotel Markham, Inc., and all the stock of the corporation was subscribed for by the Committee, which had under the terms of the Protective Agreement increased its number from three to seven members. By deed the Committee conveyed the hotel property to Hotel Markham, Inc., and the corporation issued to the Committee 5,509 shares of no par value stock valued at $5 per share, and debentures of the face value of $598,960 secured by a mortgage on the property. The shares of stock and the debentures of Hotel Markham, Inc., were deposited in depository banks, and the Committee delivered to the original depositing bondholders certificates of deposit for their pro rata share of the stock and debentures, allocating ten shares of stock for each $1,000.00 of debentures. In order to obtain operating funds for the Hotel Markham, the Committee authorized the execution of a first mortgage superior in dignity to the one securing the new debentures, and $50,000 was borrowed in this manner. After these transactions were completed, the Committee operated the corporation as its sole stockholders, officers, and members of the board of directors. Its operation of the hotel properties was quite successful and in 1938 the Committee made final payment of the $50,000 mortgage which it had executed to obtain operating capital for the hotel. Moreover, through the years it paid the operating expenses of the hotel and paid $65,885 interest on the debentures; $15,531.36 for furniture and fixtures; $12,541.36 for furniture, fixtures, repairs, and air conditioning of the coffee shop; $2,884.97 for swimming pool property; $21,089.49 for recreational property and a new well; and other substantial sums for maintenance. From the time Hotel Markham, Inc., was organized on November 1, 1930, until September, 1939, the Committee paid out from the operating profit of the hotel a total of $280,889.07.

Although such payments from operating profits were made and a part of the interest due on the debentures was paid, the Hotel was unable to pay all interest accruing on its debentures. On November 1, 1939, there was a balance of $257,520.80 accrued interest still owing, which sum added to the principal amount due made a total of $856,-512.80 due on the Hotel Markham debentures. The Committee thereupon resolved to execute a new mortgage and issue refunding debentures in the principal amount of $856,512.80, this sum being the aggregate amount of outstanding debentures plus interest accrued and remaining unpaid on November 1, 1939. By the issue of these refunding bonds the amount due bondholders by Hotel Markham, Inc., was not changed or increased, and the Committee retained the right under the Protective Agreement to sell and convey the new debentures as well as the physical property under its control. The Committee thus controlled not only the debentures but also the security for them.

Between 1930 and 1938 various certificates of deposit issued by the Committee to the original depositing bondholders were traded and sold by their owners at prices ranging from eleven cents on the dollar upward. In 1938 Edward Ball purchased a number of these certificates at fifty cents on the dollar, and at the time of the filing of this suit held Certificate of Deposit No. 220 of the face value of $243,370, and also had a contract with John F. Finke, Liquidator of the Canal Bank & Trust Company, for the purchase of certificates of the face value of $74,530 at 66⅔% of their face value, the contract conditioned upon his winning this suit.

The appellants contend that the District Court erred in its construction of the Bondholders Protective Agreement and the Declaration of Trust executed by the Committee; and "in not holding that the express trust therein involved had terminated by operation of law, a reasonable time for its performance having elapsed"; and further in not holding that at the time of the filing of the suit the condition existed "under which the Committee declared in the Declaration of Trust the beneficiaries would be entitled to a distribution" of the assets of the trust. There is no attack made upon any act of the Committee except its refusal to comply with Ball's request to terminate the trust.

The Bondholders Protective Agreement of July 1, 1930, was adopted by the original bondholders of Gulfport Hotel Company in an attempt to salvage whatever they could from a failing enterprise. The agreement is without time limit, and in the broadest terms vests the Protective Committee with power and authority to take over and manage the properties as it should see fit.

In the Sixth paragraph of the Protective Agreement it is provided:

"The Committee shall hold said bonds and coupons as trustees of an express trust, subject to no limitations except as in this agreement provided and except the duty of doing whatever in its uncontrolled opinion calculated to promote and protect the best interests of the depositors.

"The Committee may exercise all the rights and powers deemed by them in their sole discretion necessary or desirable to protect and promote the best interests of the depositors, and to carry out the purposes hereof, and may deal with the deposited bonds and coupons in any manner deemed by them in their discretion necessary or desirable for any such purposes."

By paragraph Twelve of the Protective Agreement it is further provided: "The Committee may supply any defects or omissions which it may deem necessary to enable it to carry out the general purposes of this agreement, and it is authorized to construe this agreement, and its construction of the same shall be final."

Thus by clear and unambiguous terms the Bondholders Protective Committee was vested with a wide discretion in matters affecting the property and interests of the depositing bondholders. It is furthermore plain that the depositing bondholders had implicit confidence in the integrity and ability of those men chosen to represent them and look after their interests. The Committee, which served without compensation, was at the time of its formation and is now composed of business men of ability and character who have lived up to the trust reposed in them in a substantial way. No objection was made to the manner in which the Committee conducted the affairs of Hotel Markham until the plaintiff Ball bought his way into the bond and debenture group in 1938 by securing certificates of deposit of the face value of $243,370, and securing an option on other certificates owned by the defunct Canal Bank & Trust Company. Having in sight enough stock to control the corporation, he sought to terminate the tenure of the Committee and failing in this he filed suit.

Not one word of complaint has been registered against the Committee in the handling of this property. Each and every bond and coupon holder has praised the management and operation of the property by the Committee. When the property was turned over to the Committee the bonds and coupons of the old corporation could not be sold at any price, and after a time certificates which at first sold as low as eleven cents on the dollar climbed in value until the plaintiff Ball paid fifty cents on the dollar for his holdings, and has secured an option under which, if he is successful in this suit, he is willing to pay 66⅔ cents on the dollar. No objection was lodged by the Canal Bank & Trust Company to the taking over and operation of the defunct hotel properties, and each and every bond and coupon holder has sanctioned what was being done by the Committee, and no complaint was registered until the securities climbed back to life.

Plaintiff Ball bought his certificates of the new issue of bonds and proposes to buy more, and he is loud in his praise of the management and control of the Committee, and the record shows that already in one year he has realized dividends by way of interest on his debentures in the amount of $12,168.50, a return of 10% on his investment. The Canal Bank Liquidator, Finke, specifically points out the only complaint against the Committee. He contends that ten years is long enough to close up the trust and turn the property back to the beneficial owners. He makes no other complaint. The Committee now proposes to issue a new lot of refunding debentures and the contention is that the trust should be terminated at this time.

While the Bondholders Protective Agreement gives almost unlimited powers to the Committee and is without time limit, I am of opinion, however, that it is not a contract in perpetuity. 12 Am.Jur., Contracts, § 299, p. 854. The Committee has the right, and it is its solemn duty, to see to it that the property brings to its owners the very best price which can be obtained by careful and prudent management. The Committee should be given a reasonable time in which to secure such price and wind up the business affairs of the corporation. The plaintiffs have signally failed to show that a reasonable time has elapsed in which to wind up and terminate the trust. If given a reasonable time, measuring the ability and future conduct of the Committee by its past handling of the property, I believe the Committee would be able to dispose of the property and effects of the corporation at a much higher price than would obtain if the trust was now terminated and certain owners were allowed to take over the management and control of the corporation and, in all probability, exploit it for their

760

own use, and to the detriment of those owners who have stood with the Committee and turned an almost complete loss into an asset. It might not be amiss to point out here that liquidators of defunct banks are given much time in which to hold and liquidate properties of such banks; and courts have been slow in calling them in for a hurried and final liquidation, but extend to them time in which with the exercise of good business judgment they may be able to liquidate to the advantage of stockholders and depositors.

Ball and the interveners bought interests in the properties with full knowledge that the Bondholders Protective Agreement was in existence. The certificates which they purchased were charged with and bound by the original agreement. Every certificate and every document issued by the Committee has carried unmistakable language to the effect that everything that was being done was under and pursuant to the Bondholders Protective Agreement of July 1, 1930.

The Committee has not abused the discretion reposed in it, and has not acted arbitrarily, unreasonably, or oppressively, but has at all times acted for the best interests of the bondholders. The proposed issue of refunding debentures would in no way prevent the unencumbered sale of the hotel properties at such time as a sale might be found to be advantageous and advisable. I cannot subscribe to the majority opinion and I respectfully dissent.